IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Ryan Cogdill, ) | |
| ) | Civil Action No. 8:08-1037-TLW-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Investigator David Hurt, ) | |
| DHO J.C. Brown, Grievance ) | |
| Coordinator NFN Montgomery, ) | |
| Warden Robert M. Stevenson, ) | |
| III, Operations Coordinator ) | |
| James E. Sligh, Jr., Division ) | |
| Director of Operations Robert ) | |
| Wood, and SCDC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendants' motion for summary judgment. (Dkt. # 25.)[1]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

---

[1] In a report and recommendation filed April 22, 2008, the undersigned recommended that the defendant SCDC be dismissed. (Dkt. # 10.) That report has not been adopted. Further, it appears that the SCDC was never served. (Dkt. # 9 & 10.) However, the undersigned notes that this motion for summary judgment was filed on behalf of all the defendants, including the SCDC.

The plaintiff brought this action on March 25, 2008, seeking damages for alleged civil rights violations.² On July 28, 2008, the defendants filed a motion for summary judgment. By order filed July 30, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On August 29, 2008, the plaintiff filed a response opposing the defendants' summary judgment motion.

## **FACTS**

On April 25, 2007, a package containing marijuana, cellular phones, and alcohol was sent to the Broad River Correctional Institution.³ On May 2, 2007, the plaintiff was placed in pre-hearing detention ("PHD") pending an investigation into his involvement in the incident. On June 14, 2007, the defendant Investigator David Hurt requested that the plaintiff and another inmate be charged for their involvement with the contraband package.

On August 2, 2007, the defendant James Sligh requested and received approval for an extension of the plaintiff's detention so that a disciplinary hearing could be held. A disciplinary hearing was held on August 28, 2007, in which the plaintiff was found guilty

---

²This date reflects the date that the envelope containing this compliant was stamped as having been received by the prison's mailroom. (Compl. Attach.) *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

³The plaintiff has since been transferred to Lieber Correctional Institution.

of the use or possession of narcotics, specifically marijuana, and the use or possession of a cell phone or any communication equipment.  On September 9, 2007, the plaintiff filed grievances appealing his disciplinary convictions.  Both convictions were subsequently overturned and the sanctions lifted.

In his complaint, the plaintiff alleges he was held in segregation for ten days following the reversal of his disciplinary convictions; his phone, visitation, and canteen privileges remained suspended for thirty-nine days after the reversal of his convictions; his property including a lamp, boots, religious chain, and canteen items were taken from him and never returned; the defendants failed to follow SCDC policy and procedures; and he lost his job in prison industries and has not been compensated for his lost wages. (Comp. ¶¶ 31-37.)  He is seeking an injunction ordering that he be compensated for his property and lost wages and actual and punitive damages.  (Compl at 8.)

## APPLICABLE LAW

Rule 56 of the Federal Rules of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is

deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**DISCUSSION**

A.  **Claims against the Defendant Sligh**

The defendant Sligh contends that the complaint fails to allege any specific fact, act or omission on his part and therefore fails to state a claim against him. The undersigned agrees.

It is well-established that a civil rights plaintiff must allege the personal involvement of a defendant to state a claim under 42 U.S.C. § 1983. *See, e.g., Monell v. Dept. of Social Svs.*, 436 U.S. 658, 691-92 (1978). As the plaintiff has not alleged any personal involvement of the defendant Sligh, he has failed to state a claim against him. Additionally, it appears that the plaintiff concedes that the defendant Sligh should be dismissed as he states in his memorandum opposing the defendants' summary judgment motion that after reviewing his complaint, "there is no cause of action against this defendant." (Pl.'s Mem. Opp. Summ. J. at 3.) Accordingly, the defendant Sligh should be dismissed.

B.  **Claims against the Defendants in their Official Capacities**

The defendants contend that to the extent that the plaintiff raises claims against them in their official capacities, these are actually claims against the SCDC and should be dismissed. (Defs.' Mem. Supp. Summ. J. Mot. at 5.) However, although the complaint designates the defendants as officers of the SCDC, the complaint specifically states the defendants are being sued in their individual capacities. (*See* compl. at 1.)

**C. Due Process Claims**

The petitioner alleges his due process rights were violated in regard to his disciplinary proceeding. The defendants contend that they are entitled to summary judgment on these claims. The undersigned agrees.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. Amend. XIV § 1. Prison officials must accord an inmate minimal due process requirements for a disciplinary hearing as this hearing could result in deprivation of a state-created liberty interest, good-time credits. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Liberty interests in the context of disciplinary hearings include deprivation of good time credits.

The protections of the due process clause do not attach unless the plaintiff was deprived a liberty interest. *See Lekas v. Briley,* 405 F.3d 602, 607 (7th Cir.2005). Since his good-time credits were never revoked, he cannot claim a right to due process under *Harper v. Goodwin*, 162 Fed.Appx. 304 (5th Cir. 2006)(State inmate's placement in administrative segregation for 23 days following disciplinary hearing was insufficient to raise due process concerns, where inmate's good time credits were restored when disciplinary conviction was overturned on direct appeal); *Ragan v. Lynch*, 113 F.3d 875 (8th Cir. 1997)(court held that even assuming that procedural errors occurred during the disciplinary hearing as alleged, the administrative reversal of the disciplinary case and restoration of all good-time credits cured any due process violation that had occurred at

the initial hearing); *Walker v. Bates*, 23 F.3d 652 (2d Cir. 1994)(the court distinguished between cases in which the denial of good-time credits without due process affected a prisoner's sentence by prolonging detention, and cases in which the error was corrected before the penalty was served); *Harvey v. Mahon,* 2004 WL 3334794 (W.D.Va. 2004)(*citing Ragan*). And other sanctions short of credit deprivation do not even rise to the type of "atypical and significant hardship" that is protected by the due process clause. *See Sandin v. Conner,* 515 U.S. 472, 486 (1995). The plaintiff's convictions have been reversed and his good-time credits restored, and thus he has no basis for this federal suit.

"Further, even if there were a liberty interest implicated by the prison classification, no action can lie for a due process violation unless the restriction is an 'atypical and significant hardship' that was related to the 'ordinary incidents of prison life.'" *Id*. In the context of administrative segregation, due process is only required when administrative segregation presents a type of atypical, significant deprivation, in relation to the ordinary incidents of prison life. *Sandin v. Conner,* 515 U.S. 472 (1995); *See also Beverati v. Smith,* 120 F.3d 500, 504 (4th Cir. 1997) (finding that six-month administrative confinement does not constitute a deprivation of that implicates due process). The plaintiff has not alleged that the conditions of administrative segregation were atypical.

Additionally, inmates do not have a liberty interest in receiving or retaining any particular security or custody status. *Slezak v. Evatt*, 21 F.3d 590. "There is no constitutional right for a state or federal prisoner to be housed in a particular institution, at

7

a particular custody level, or in a particular portion or unit of a correctional institution." *Rufus v. Fed. Bureau of Prisons,* 2008 WL 351004, *4 (D.S.C. 2008). "Changing an inmate's prison classification generally does not deprive him of liberty. *Id.* at *5 (citations omitted).

Finally, as to the plaintiff's claims regarding the loss of his job and wages, the undersigned notes that inmates have no liberty interest in earning work time credits or participating in work programs. *Toussaint v. McCarthy,* 801 F.2d 1080, 1094-95 (9th Cir.1986). An inmate's expectation of keeping or obtaining a specific prison job, or any job, does not implicate a protected constitutional right. *See, e.g., Coakley v. Murphy,* 884 F.2d 1218, 1221 (9th Cir.1989) (holding that inmates have no protected property interest in continuing in work-release program); *Flittie v. Solem,* 827 F.2d 276, 279 (8th Cir.1987) (opining that inmates have no constitutional right to be assigned to a particular job); *Ingram v. Papalia,* 804 F.2d 595, 596 (10th Cir.1986) (concluding that the Constitution does not create a property interest in prison employment); *Adams v. James,* 784 F.2d 1077, 1079 (11th Cir.1986) (stating that assignment to job as law clerk does not invest inmate with a property interest in continuation as such); *Gibson v. McEvers,* 631 F.2d 95, 98 (7th Cir.1980) (holding that prisoner's expectation of keeping prison job does not amount to a property interest subject to due process protection); *Bryan v. Werner,* 516 F.2d 233, 240 (3d Cir.1975) (reasoning that inmate's expectation of keeping job is not a property interest subject to due process protection).

In sum, inmates have no independent constitutional right to job opportunities while incarcerated, and prison officials may generally terminate an inmate from his job for any reason without offending constitutional principles. *See Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir.1995) (a prisoner's liberty "interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). Thus, the loss of a prison job (and therefore wages) does not implicate a liberty interest. *Penrod v. Zavaras,* 94 F.3d 1399, 1407 (10th Cir.1996).

The petitioner further alleges that the defendants Stevenson and Montgomery failed to follow SCDC policy in the processing of his appeal of his disciplinary conviction. However, the failure of a prison official to follow prison procedures does not, standing alone, amount to a constitutional violation. *See Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983); *Scott v. Hamidullah*, 2007 WL 904803 *5 n. 6 (D.S.C. March 21, 2007) *(citing Riccio v. County of Fairfax*, 907 F.2d 1459, 1469 (4th Cir.1990); *Johnson v. S.C. Dep't of Corr.,* 2007 WL 904826 at *12 (D.S.C. Mar.21, 2007) ("Plaintiff's allegation that defendants did not follow their own policies or procedures, standing alone, does not amount to a constitutional violation.") (*citing Riccio,* 907 F.2d at

1469). Accordingly, based on the foregoing, the plaintiff's due process claims should be dismissed for failure to state a claim upon which relief may be granted.

**D. Cruel and Unusual Punishment Claims**

The plaintiff alleges the defendants inflicted cruel and unusual punishment against him in their handling of his disciplinary proceeding and placing him in administrative segregation during the investigation. (Compl.¶¶ 39, 51.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on persons convicted of crimes. *Williams v. Benjamin*, 77 F.3d 756 (4th Cir. 1996). Claims of inhumane treatment are subject to scrutiny under the Eighth Amendment. Analysis of an Eighth Amendment claim requires inquiry into both a subjective and an objective component. The subjective component requires an analysis of whether the prison official acted with a sufficiently culpable state of mind, and the objective component requires an analysis of whether the deprivation suffered or injury inflicted was sufficiently serious. *Id*. Only extreme deprivations will satisfy the objective component, and the inmate must produce evidence of a serious or significant physical or mental injury as a result of the challenged conditions. *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir.1993).

Placement in administrative detention, however, has been repeatedly held not to violate the prohibition on cruel and unusual punishment. *See In re Long Term Administrative Segregation of Inmates Designated as Five Percenters,* 174 F.3d 464, 471 (4th Cir.1999) ("[T]he restrictive nature of high-security incarceration does not alone constitute cruel and unusual punishment.")(*citing Sweet v. South Carolina Dept. of*

*Corrections*, 529 F.2d 854, 857 n. 1 (4th Cir.1975) (en banc)). Further, the plaintiff has failed to allege that segregated confinement caused him any significant physical or mental health injury. Accordingly, he fails to state any claim of cruel and unusual punishment in violation of the Eighth Amendment. *See Strickler v. Waters,* 989 F.2d 1375, 1380-81 (4th Cir. 1993). Thus, these claims should be dismissed.

### E.  Property Claims

The plaintiff contends that his personal property, including a lamp, boots, religious chain, and canteen items, was taken and never returned. (Compl. ¶ 34.) The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." However, the Due Process Clause is not implicated by a negligent act of a state official causing unintended loss of or injury to life, liberty, or property. *Daniels v. Williams*, 474 U.S. 327 (1986). Thus, to the extent the plaintiff's claim sounds in negligence, he cannot bring this action under § 1983. *See also DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 200-203(1989) (section 1983 does not impose liability for violations of duties of care arising under state law).

Moreover, an intentional deprivation of property by a state employee, if unauthorized, does not violate the Due Process Clause if a meaningful post-deprivation remedy for loss is available. *Hudson v. Palmer*, 468 U.S. 517 (1984). In South Carolina, prisoners may bring an action for recovery of personal property against officials who deprive them of property without state authorization. *See McIntyre v. Portee,* 784 F.2d

566, 567 (4th Cir. 1986) (*citing* S.C. Code Ann. § 15-69-10 et seq.). Such an action provides "a post-deprivation remedy sufficient to satisfy due process requirements." *Id*. (Internal citations omitted).

Although prisoners may pursue property deprivation claims against state officials under 42 U.S.C. § 1983 under some circumstances, such as where the deprivation is pursuant to an official policy, such is not the case under the facts presented here. There is no allegation, nor any evidence to show, that any prison policy allowed correctional officers to mishandle the plaintiff's personal property. In fact, the plaintiff specifically alleges that the defendants' handling of his property did not follow prison policies and procedures. As the plaintiff appears to claim that the defendants intentionally deprived him of property without state authorization, the plaintiff's claims regarding the deprivation of his property claim must fail.

**F.  Absolute Immunity**

The defendant DHO Brown contends that as a DHO, he is entitled to absolute immunity.   There is little law on this issue, but the cases discussing it suggest DHOs are not entitled to absolute immunity.

The Supreme Court has recognized that some government officials are completely exempt from liability for their acts in their official positions.  This is the affirmative defense of absolute immunity.  In *Butz v. Economou*, 438 U.S. 478, 508-17 (1978), the Court broadened this rule to include members of both the federal and state executive branches whose role in administrative adjudicatory proceedings is "'functionally comparable'" to the

role of judges in judicial proceedings. This rule does not depend on the executive officer's title, only whether the complaint relates to a judicial or quasi-judicial function. *Ward v. Johnson,* 690 F.2d 1098, 1105 (4th Cir. 1982).

"Absolute immunity flows not from rank or title . . . but from the nature and responsibilities of the individual official." *Cleavinger v. Saxner,* 474 U.S. 193, 201 (1985). For that reason, courts have not decided issues of absolute immunity based solely on whether the defendant was a DHO. *See Barry v. Whalen*, 796 F.Supp. 885, 894 (E.D.Va.1992) (revised federal disciplinary structure is not sufficiently distinct from BOP structure considered by Supreme Court in *Cleavinger* to justify finding absolute immunity). *Zavaro v. Coughlin*, 970 F.2d 1148, 1153 n. 2 (2nd Cir. 1992)(absolute immunity does not extend to officers presiding at prison disciplinary hearings; rather, prison disciplinary hearing officers are protected only by qualified immunity).

In seeking absolute immunity, a government official, like Brown, bears a heavy burden of demonstrating that overriding public policy considerations warrant such exceptional protection. *See Forrester v. White*, 484 U.S. 219, 224 (1988). In assessing whether a government official is entitled to absolute immunity, the Supreme Court has applied a so-called functional approach involving the following factors: the need to assure that the individual can perform his functions without harassment or intimidation; the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; insulation from political influence; the importance of precedent; the adversary nature of the process; and the correctability of error on appeal.

*Cleavinger,* 474 U.S. at 201-202 (*citing Butz*, 438 U.S. at 512- 14). The Court has found prison officials, such as members of a prison disciplinary committee, "who hear cases in which inmates are charged with rules infractions," not entitled to absolute immunity. *Cleavinger*, 474 U.S. at 194. The defendant Brown has failed to demonstrate that any of the factors set forth in *Butz* require that he be afforded absolute immunity in this case.

Moreover, as the plaintiff points out in his memorandum opposing summary judgment, the defendants did not pled absolute immunity in their answer. (Pl.'s Mem. Opp. Summ. J. Mot. at 24.) Immunity is an affirmative defense that must be pled or it is waived. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980). While the defendants' answer to the complaint raises the defense of qualified immunity, it does not raise the defense of absolute immunity. *See Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir.1996) ("Although [the defendant] did raise the affirmative defense of qualified immunity, an absolute immunity determination involves an entirely different analysis. Given that the defense of absolute immunity was not affirmatively pleaded or argued . . . and in light of the significant distinctions between qualified and absolute immunity claims, this defense was affirmatively waived . . . ."). Accordingly, the defendant Brown should not be granted absolute immunity.

**G. Qualified Immunity**

The defendants also raise the defense of qualified immunity. Qualified immunity requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then

determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). However, because there is no evidence that any specific right of the plaintiff was violated, it is unnecessary for this Court to address the qualified immunity defense. *See Porterfield v. Lott,* 156 F.3d 563, 567 (4th Cir. 1998) (when the court determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist.").

## H.  State Law Claims

To the extent that the plaintiff states additional claims under state law, (i.e. claims under the South Carolina Torts Claim Act), the court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted on the plaintiff's federal claims as set for above. *See* 28 U.S.C. § 1367(c).

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. # 25) be GRANTED and the complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

December 17, 2008
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).